IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**BENITA KOSIARA,**

    Plaintiff,

v.                                No. 06 C 3013

**MICHAEL J. ASTRUE,**

    Defendant.

### MEMORANDUM OPINION AND ORDER

Plaintiff Benita Kosiara brought this action appealing the decision of the Commissioner ("Commissioner") of the Social Security Administration ("SSA"). The dispute centers on plaintiff's onset date of disability. Both parties have filed cross motions for summary judgment. For the following reasons, I deny plaintiff's motion and grant defendant's motion for summary judgment.

I.

Plaintiff filed her application for disability insurance benefits ("DIB") on November 24, 2002, alleging a disability onset date of January 10, 2000 due to hand problems, complications from diabetes, and various other medical problems. Her application was initially denied on February 13, 2003 and upon reconsideration on April 22, 2003. At plaintiff's request, a hearing was held on March 18, 2004 before Administrative Law Judge John Mondi ("ALJ"). Plaintiff was represented by counsel and submitted medical records

into evidence.

Plaintiff testified at the hearing before the ALJ. She testified she has worked since her alleged onset date of disability of January 10, 2000. (R. 336.) Her last place of employment was a place called Keller Candles, where she worked full-time from September 2003 to February 20, 2004. (R. 336-37.) Her job responsibilities consisted of candle-making and baby sitting two children, who were four and six years old. (Id.) She engaged in occasional heavy lifting while on the job and admitted to lifting more than 20 pounds periodically. (R. 338.) She stopped working for Keller Candles as a result of her carpal tunnel, for which she underwent surgery on February 26, 2004. (Id.) She testified she did not feel she could return to this job, for the employer had changed production standards which she did not think she could keep up with. (Id.)

Prior to her employment at Keller Candles, plaintiff worked at Oneida Home Store on a full-time basis from August 2002 to October 2002. (Id.) This job required some lifting of objects around 20 pounds; plaintiff would occasionally require assistance with some of the heavier lifting. (R. 339.) She left her job at Oneida Home Store because she did not get along with the manager. (Id.) From 1995 through January 2000, the alleged date of her disability onset, plaintiff worked at Fisher Scientific packing laboratory equipment. This job sometimes required lifting as much as fifty pounds. (R. 339-40.) Plaintiff was on disability the last year and

a half of her employment at Fisher Scientific. (R. 339.)

Plaintiff also described her medical condition at the hearing. She suffers from diabetes and neuropathy, and has been insulin dependent since July 1958. (R. 341.) She has diabetic retinopathy, for which she has undergone laser eye treatments, and gastroparesis which causes difficulty in her digestion and for which she takes medication. (R. 342-43.) Prior to her February 2004 carpal tunnel surgery, she had also undergone surgery on her hands in 1997. (R. 341.) Plaintiff also suffers from degenerative disc disease in her neck, which causes pain and weakness in her left arm. (R. 342.) Currently, her physician has restricted her to lifting 15 pounds. (R. 344.)

The ALJ concluded that plaintiff was disabled within the meaning of the Social Security Act ("the Act") with an onset disability date of February 20, 2004. The ALJ found plaintiff had engaged in substantial gainful activity since her alleged onset of disability, January 10, 2000. (R. 23.) Her monthly earnings from September 2003 to February 2004 were consistent with substantial gainful activity. (R. 21.) The ALJ also examined plaintiff's medical records and noted

> progress notes show[] she was subsequently released to light duty and her testimony indicated recovery such that she was able to engage in significant work activities thereafter. While she has a history right hand release and complaints of recurrent right wrist pain and numbness secondary to packing boxes, she also was informed her current symptoms are unrelated to prior surgery, although advised to avoid repetitive trauma. . . . [EMG] study revealed mild peripheral neuropathy and entrapment of the

3

cubital, carpal, and radial tunnels.  In March 2000, her lifting capacity was assessed at 15 pounds.  In August, she was referred to physical therapy following complaints of left wrist pain and developing osteoarthritis. . . . The record shows complaints of left shoulder pain on July 2001 but also that claimant had regained full range of motion three months later.

(R. 21.)

Plaintiff was found to have a number of severe impairments, "but that none of those impairments met or equaled the requirements of any of the listed impairments under Appendix 1, Subpart P, Regulations No. 4." (R. 22.)  Therefore the ALJ examined plaintiff's residual functional capacity ("RFC").  The ALJ also found that plaintiff could perform and sustain most light and sedentary work until February 20, 2004, when her worsening carpal tunnel condition compromised her ability to perform even sedentary work.  This would include her prior work as a sales clerk or other sedentary jobs.  The ALJ determined that plaintiff's statements regarding disability were credible regarding a disabling condition, but not with respect to her alleged onset date. (R. 23.)  The ALJ found plaintiff's onset date allegations "not fully credible in view of her activities and the medical evidence." (R. 22.)  The ALJ explained

> [t]he medical evidence shows that she was released to light work after the alleged onset of disability and, even today, engages in a wide range of activities despite testifying to a worsening condition. Furthermore, a left shoulder x-ray was normal and her left shoulder pain had reportedly resolved by October 2001; there were no ongoing complaints of cervical pain; and she testified her diabetic retinopathy is under control, despite seeing floaters. After being hospitalized for gastro paresis,

4

> she did not require further treatment after a week of
> inpatient care.  Despite allegations of symptoms and
> limitations preventing all work, claimant went on
> vacation in late March 2002, an undertaking that suggests
> the ability to do a significant amount of sitting and
> moving about.  Moreover, she lives alone, had not
> reported needing help maintaining her residence, and in
> fact is able to help an elderly individual.

(R. 22.)  The ALJ also noted the State agency physician's findings and remaining medical opinions were consistent.  (Id.)

## II.

The Act provides for limited judicial review of final decisions of the Commissioner.  I may only determine whether the decision of the ALJ is supported by substantial evidence in the record.  *Wolfe v. Shalala,* 997 F.2d 321, 322 (7th Cir. 1993).  In determining whether the Commissioner's findings are supported by substantial evidence, I may not "reevaluate the facts, re-weigh the evidence, or substitute [my] own judgment for that of the [ALJ]." *Edwards v. Sullivan,* 985 F.2d 334, 336 (7th Cir. 1993) (internal citations omitted).  Rather, I must affirm a decision supported by substantial evidence in the absence of an error of law.  *Id*. at 336-37.

## III.

Plaintiff argues the ALJ erred by ignoring evidence favorable to her in determining her onset date.  *See Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001).  The evidence can be grouped as pertaining to the following subjects.  First, that her retinopathy was active as of June 2000, as set forth in her medical records.

5

Second, that during 2000, plaintiff suffered from left wrist pain subsequent to a fracture and that the EMG resulted in a diagnosis of cubital, carpal, and radial entrapments secondary to mild peripheral neuropathy. Plaintiff highlights Dr. Walsh's December 5, 2000, progress note which states "I do think she has a permanent partial disability." (R. 250.) Third, in 2001, plaintiff experienced complications with her diabetes, and had the fifth toe of each foot amputated. Fourth, plaintiff's complaint and treatment of her shoulder began in July of 2001. Fifth, plaintiff suffered from insomnia in 2002. Sixth, evidence existed from 2001 of plaintiff's cervical problems.

When determining the onset date of a disability, the ALJ should consider "(1) the claimant's allegations as to the onset date; (2) the date that the claimant left work; and (3) medical evidence of onset." *Henderson v. Apfel*, 179 F.3d 507, 513 (7th Cir. 1999) (citing *Stein v. Sullivan*, 892 F.2d 43, 46 (7th Cir. 1990); *Nolen v. Sullivan*, 939 F.2d 516, 519 (7th Cir. 1991)). Of these three factors, the medical evidence is the most significant. *Id.*; see also SSR 83-20, at *1 (S.S.A. 1983).

The ALJ duly considered plaintiff's testimony concerning her onset date and the date when she left work. Plaintiff unequivocally testified that she continued to work after her alleged onset date and that these jobs included some lifting. Plaintiff testified she permanently stopped working on February 20, 2004. She also testified as to her current living conditions, and

her ability to take vacations in the years after her alleged onset date in 2000. She did not testify about any insomnia. The ALJ properly noted plaintiff's testimony and pointed out significant portions of it in support of its conclusion.

The ALJ also considered the medical evidence. Although the ALJ did not refer to Dr. Walsh by name, the ALJ's findings contain an extensive review of Dr. Walsh's medical records and progress notes concerning plaintiff. Moreover, Dr. Walsh's medical records are not inconsistent with the ALJ's findings. The ALJ correctly noted that between January and December of 2000, plaintiff's medical records (by Dr. Walsh) commented plaintiff was not working because of her employer Fisher Scientific's inability to accommodate her. The nature of her employment was to pack laboratory equipment. In the same note where Dr. Walsh opined that plaintiff "has a partial permanent disability," he goes on to recommend plaintiff "undergo a functional capacity assessment if her employer had a light duty position available for her." (R. 250.) If such a position were not available, Dr. Walsh suggested plaintiff consider a job change. (Id.) This statement suggests Dr. Walsh believed plaintiff capable of some form of employment after her alleged onset date.

The ALJ also properly addressed medical evidence concerning five of the subjects identified by plaintiff. First, the ALJ specifically found that plaintiff "had severe impairments, including insulin dependent diabetes with neuropathy and

7

retinopathy, since at least January 10, 2000." ®. 21.) Second, and similarly, the ALJ addressed that an "[EMG] study revealed mild peripheral neuropathy and entrapment of the cubital, carpal, and radial tunnels." (Id.) Third, the ALJ noted plaintiff's 2001 foot surgery. (Id.) Fourth, the ALJ examined the records of plaintiff's shoulder and treatment, finding that condition improved. ®. 22.) Sixth, the ALJ also addressed the evidence of plaintiff's cervical problems and pain. ®. 21-22.) The ALJ also noted, however, that the medical evidence did not sustain plaintiff's alleged onset date in light of her physician's notes concerning her employment; her ongoing treatment, and in some cases improvement, of some of the identified conditions; and her present ability to lift 15 pounds;[1] and her employment history since her alleged onset date. (Id.) The only subject that was not addressed by the ALJ was plaintiff's insomnia. Plaintiff did not complain about this in her testimony, and it is not expanded on at much length in the medical records. Her physician noted she was having

---

[1] Plaintiff argues that the ALJ erred in adopting the State agency physicians opinions that plaintiff was cable of light work. Specifically, plaintiff claims that the state agency's physician's determination, in particular that plaintiff could lift up to 20 pounds occasionally, was contradicted by her medical records because plaintiff's physician restricted her to lifting 15 pounds. I disagree with plaintiff that a significant discrepancy exists here because of a five pound difference. Moreover, this may be a distinction without a difference for sedentary work is defined as work which "involves lifting no more than 10 pounds at a time." 20 C.F.R. §404.1567(a). Under either the state agency physician's opinion or plaintiff's physician's opinion, plaintiff could still be deemed capable of sedentary work.

problems sleeping on her left side as a result of her left shoulder in 2002. (R. 128, 184.) This is not significant evidence that would undermine the ALJ's determination, however.

Plaintiff next argues that the ALJ failed to make a proper Step Three determination, in that he failed to reference any of the relevant listings or criteria or examine the evidence in relation to Listing 9.08A for diabetes mellitus. Social Security regulations require that a claimant suffer from a disability within the meaning of the Act in order to received DIB. 20 C.F.R. § 404.1505(a). In order to determine whether the claimant is disabled, a sequential five-step evaluation must be performed pursuant to 20 C.F.R. § 404.1520. The Seventh Circuit has summarized the test as follows:

> The [ALJ] must determine in sequence:
> (1) whether the claimant is currently employed; (2) whether she has severe impairment; (3) whether her impairment meets or equals one listed [in 20 C.F.R. pt. 404, subpt. P, app. 1]; (4) whether the claimant can perform her past work; and (5) whether the claimant is performing any work in the national economy. Once the claimant has satisfied Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment, but cannot perform her past work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job.

*Pope v. Shalala*, 998 F.2d 473, 477-78 (7th Cir. 1993) *(overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561 (7th Cir. 1999)); 20 C.F.R. § 404.1520(a)(4)(i)-(v). With regard to Step Three, plaintiff "has the burden of showing that his impairments meet a listing, and he must show that his impairments satisfy all of the

9

various criteria specified in the listing." *Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006).

Here, the ALJ specifically found that "the record shows that claimant has diabetes mellitus, diabetic retinopathy, degenerative disc disease, gastroparesis, and . . . left carpal tunnel release. Her impairments are severe, but even in combination, do not meet or equal any of the impairment listed in Appendix 1, Subpart P, Regulations No. 4." ®. 22.) The listing plaintiff refers to for diabetes mellitus, § 9.08(A), requires a showing of "[n]europathy demonstrated by significant and persistent disorganization of motor function in two extremities resulting in sustained disturbance of gross and dexterous movements, or gait and station." 20 C.R.F. § 404, subpt. P, App. 1, § 9.08(A). Plaintiff argues that Dr. Walsh's medical records "may tend to show" this listing. There is no report in the record, however, by Dr. Walsh or any other physician, identifying a significant and persistent disorganization of motor function in two extremities. Although plaintiff has suffered from injuries and surgeries in her extremities, plaintiff's medical records indicate she was likely capable of performing light work after 2000 and lifting up to 15 pounds. She worked from 2003-2004 making candles and looking after small children. Plaintiff testified she is presently able to clean dishes and write, although not for extended periods or with very small pencils. The only condition that may have risen to such a level was the limitation of motion in plaintiff's shoulder, but as

noted by the ALJ she regained nearly full range of motion by October 16, 2001. Therefore, there is substantial evidence to sustain the ALJ's Step Three determination.

Plaintiff also challenges the ALJ's credibility finding as erroneous and unsubstantiated. An ALJ's credibility determinations "generally will not be overturned unless they were 'patently wrong.'" *Zurawski*, 245 F.3d at 887 (quoting *Powers v. Apfel*, 207 F.3d 431, 431 (7th Cir. 2000)). SSR 96-7p requires the ALJ to consider the claimant's "statements about symptoms with the rest of the relevant evidence in the case record" and to consider the entire case record, including objective medical evidence, and other relevant evidence in coming to a credibility determination. The SSR also requires an ALJ to "build an accurate and logical bridge from the evidence to his conclusion." *Clifford*, 227 F.3d at 872.

Here, the ALJ found plaintiff's testimony about her alleged onset date "not fully credible in view of her activities and the medical evidence." ®. 22.) Specifically, the ALJ held that the medical evidence indicated she was released to light work, and that her shoulder treatment had been successful. (Id.) Similarly, the ALJ noted plaintiff's testimony that she went on vacation in March 2002, that she lives alone, does not need assistance maintaining her residence and is able to care for an elderly individual. (Id.) Accordingly, the ALJ's decision sufficiently summarizes a number of plaintiff's medical records, spanning over several years, and testimony which supports his credibility determination.

11

IV.

For the reasons stated herein, plaintiff's motion is denied and defendant's motion for summary judgment is granted. The final ruling of the SSA is affirmed.

**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge

Dated: April 6, 2007